UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| KATHERINE WELTER,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendant. | CIV. 20-5029-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant United States of America filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). (Docket 7). The motion is accompanied by a legal memorandum, two declarations and three exhibits. (Dockets 8, 9, 9-1 through 9-3 & 10). Plaintiff opposes defendant's motion. (Docket 17). Plaintiff's response is supported by an affidavit and 25 exhibits. (Dockets 18 & 18-1 through 18-25). Plaintiff also filed a motion to permit Fed. R. Civ. P. 56(d) discovery prior to the court ruling on defendant's motion. (Docket 19). Defendant filed a reply brief. (Docket 21). For the reasons stated below, plaintiff's motion for Rule 56(d) discovery is denied and defendant's motion to dismiss is granted.

**ANALYSIS**

Plaintiff's complaint centers around the collision between plaintiff's bicycle and an automobile being driven by Jennifer Her Many Horses on August 8, 2019. (Docket 1). As a result of the collision, plaintiff alleges she was seriously injured and seeks money damages from the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et. seq.* ("FTCA"). Id.

The government filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1).  (Docket 7).  The government seeks dismissal because Ms. Her Many Horses was "not a federal employee."  (Docket 8 at p. 1).  Instead, the government asserts she was "the Nutrition Manager of the OLC [Oglala Lakota College] Head Start Program."  Id. at p. 6.  In that capacity, the government contends Ms. "Her Many Horses was not carrying out a function authorized by a BIA 638 contract."  Id. at p. 9.  "At most", the government submits "she was acting as an employee of the OLC Head Start Program, which is funded, at least in part, through a grant from the U.S. Department of Health and Human Services, and whose employees are not covered by the FTCA."  Id.

In support of its motion, the government submitted the declarations of Krissane R. Stevens and James C. Anagnos.  (Dockets 9 & 10).  Ms. Stevens is the "Self-Determination Officer/Advisor for the Great Plains Regional Office of the Bureau of Indian Affairs ("BIA")."  (Docket 9 ¶ 2).  In her capacity with the BIA, Ms. Stevens' declaration included copies of the three 638 contracts which the BIA has with OLC.[1]  Id. ¶¶ 4-11 (referencing Dockets 9-1 through 9-3).  The 638 contracts are (1) "Agricultural Extension Services Program Contract No. A18AV00525;" (2) "Tribally Controlled Community College

---

[1] "638 contracts" are created pursuant to the Indian Self-Determination and Education Assistance Act of 1975 and are contracts between the BIA and a tribe or tribal organization by which the tribe or tribal organizations receive money and assume responsibility for services which the BIA would otherwise perform.  Roemen v. United States, 463 F. Supp. 3d 990, 1007 (D.S.D. 2020)

Program Contract No. A20AV00118;" and (3) "Tribal Adult Education Contract No. A20AV00133." (Dockets 9-1 through 9-3). In light of these contracts, Ms. Stevens concludes that "[t]he OLC Head Start Program does not fall within the scope of any of the BIA's 638 contracts with OLC." (Docket 9 ¶ 12).

Mr. Anagnos is the "Assistant Deputy Associate General Counsel of the Department of Health and Human Services ("HHS") Office of the General Counsel, General Law Division, Claims & Employment Law Branch." (Docket 10 ¶ 2). Mr. Anagnos declares "[t]he Office of Head Start, which is a component within the HHS Administration of Children and Families, administers grant funding to Head Start grantees . . . [and] [e]mployees of Head Start grantees are not federal employees, but rather employees of the grantee." Id. ¶¶ 4-5). As part of his declaration, Mr. Angnos states that "Oglala Lakota College is a Head Start grantee" and that "employees of Head Start grantees are not covered under the FTCA." Id. ¶¶ 6-7.

The government submits that "a tribal employee must be acting within the scope of their employment and carrying out functions authorized in or under a 638 contract to be considered a federal employee for FTCA purposes." (Docket 8 at p. 9) (referencing Shirk v. U.S. ex rel. Department of Interior, 773 F.3d 999, 1003-04 (9th Cir. 2014)). Because "[t]here is no relationship between the scope of the [three] 638 contracts and the functions of the OLC Head Start Program[,]" the government argues Ms. Her Many Horses was not "carrying out a function authorized by a 638 contract at the time of the

3

accident[,]" and in that capacity Ms. Her Many Horses "is not . . . deemed a federal employee under the FTCA." Id. at p. 11.

In response to the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff contends Ms. Her Many Horses was driving "an Oglala Lakota College . . . vehicle" as an "Oglala Lakota College/Oglala Lakota College Head Start Program employee[.]"  (Docket 17 at p. 1).  Plaintiff argues the government's "[m]otion is premature." Id. at p. 8.

> [S]ince there is almost no evidence of record through sworn testimony and affidavits, which goes to the heart of whether or not Jennifer Her Many Horses was in fact an employee of "Oglala Lakota College" and/or whether or not Oglala Lakota College was negligent in its own right for the acts of its employee or borrowed servant on a "special errand" for Oglala Lakota College at the time[.]

Id. at pp. 7-8.

While acknowledging Ms. "Her Many Horses was performing her job duties and was acting within the scope of her employer-employee/master-servant/respondeat superior relationship at the time (or at least, 'a' scope of employment for someone)," plaintiff submits what remains a "mystery . . . is who she was working for, what 'special errand' was she on, for whom, and who sent her, and what was she transporting so fast, so urgently?" Id. at p. 11.

Plaintiff argues the declaration of Ms. Stevens concerning the contractual obligations of OLC under the Tribally Controlled Community College Program Contract "'leave[s] room for a factual determination as to its duties and responsibilities toward the people they employ/use, and the manner of legally carrying out its 638 contracts." Id. at p. 12 (referencing Docket 9-2).  Within

that contract, plaintiff suggests the "authority to 'obtain interagency motor pool vehicles . . . and related serves [sic] for performance of *any activities* carried out under this contract[,]' " should allow plaintiff to conduct Rule 56(d) discovery. Id. (emphasis in original). That OLC has a private insurance carrier, "Hudson Insurance Group . . . [which] is *not* licensed in the State of South Dakota" similarly in plaintiff's view warrants an opportunity to engage in Rule 56(d) discovery. Id. at p. 14 (emphasis in original). For these reasons, plaintiff moves the court to stay resolution of the government's motion and to permit Rule 56(d) subject matter jurisdiction discovery. (Docket 19).

In reply, the government opposes plaintiff's Rule 56(d) motion and argues plaintiff fails to "identify which 638 contract provision [Ms.] Her Many Horses was carrying out at the time of the accident." (Docket 21 at p. 3) (referencing Shirk, 773 F.3d at 1006). Because "[h]earsay or conspiracy theories do not manufacture jurisdiction where the uncontroverted evidence indicates [Ms.] Her Many Horses was a Tribal employee," the government contends her "actions had no connection to the three 638 contracts existing at OLC." Id. at p. 5. For these reasons, the government asserts "Plaintiff fails to make the necessary link from any contractual language to qualify [Ms.] Her Many Horses as a federal employee." Id. at p. 6. Because "Plaintiff has brought forth no evidence to suggest [Ms.] Her Many Horses was acting pursuant to a valid 638 contract and instead only raised speculative allegations that are unsupported by the evidence of record[,]" the government concludes "the Court should deny [plaintiff's] request to conduct jurisdictional discovery." Id. at p. 7.

RULE 12(b)(1) MOTION

Rule 12 provides in part that "a party may assert the following defenses by motion: . . . lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1).  "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (internal citation omitted).  "In a factual attack, the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted).

This case involves a factual attack under a Rule 12(b)(1) motion, that is, a factual challenge to "the trial court's jurisdiction—its very power to hear the case[.]" Id. at 730.  In resolving a factual attack "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.  See also Faibisch v. University of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002) ("When a district court engages in a factual review, it inquires into and resolves factual disputes.").  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material

6

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  Osborn, 918 F.2d at 730.  Any finding of fact made by the district court is reviewed "under the 'clearly erroneous' standard."  Id. (internal citation omitted).

This action is filed pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq. ("FTCA").  (Docket 1 ¶ 3).  Section 1346(b)(1) of Title 28 confers exclusive jurisdiction to the district courts over "civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  An "[e]mployee of the government" is defined to "include . . . officers or employees of any federal agency[.]"  28 U.S.C. § 2671.  As used in the FTCA and § 1346(b) "the term 'Federal agency' includes the executive departments . . . but does not include any contractors with the United States."  Id.

Plaintiff bears the burden of proof on the issue of subject matter jurisdiction.  Osborn, 918 F.2d at 730.  The uncontested facts are that Ms. Her Many Horses was an employee of the OLC Head Start Program, which was administered through the HHS Office of Head Start.  Plaintiff points to no

7

language in any of the three 638 contracts between the United States and OLC which would provide a basis to find that Ms. Her Many Horses was an employee covered by or acting within those contracts and thus a federal employee for FTCA purposes.   The court is not obligated to go line-by-line through each of the three 638 contracts to determine if plaintiff can satisfy her subject matter jurisdiction obligation.   Plaintiff fails to satisfy her burden of proof as to subject matter jurisdiction under the FTCA.

Of concern to the court is the fact that plaintiff separately filed a lawsuit against Ms. Her Many Horses in federal court.   See Welter v. Her Many Horses, CIV. 20-5057 (D.S.D. 2020), Docket 1.   That complaint was filed just seven days after plaintiff's brief in resistance to the government's motion to dismiss and motion for Rule 56(d) discovery were filed in the present case.   Compare Dockets 17 & 19, CIV. 20-5029, and Docket 1, CIV. 20-5057.   As part of that separate litigation, on November 23, 2020, District Judge Lawrence L. Piersol entered an order for discovery report and scheduling information.   (Docket 4, CIV. 20-2057).   That order provided plaintiff a mechanism to conduct discovery about the role Ms. Her Many Horses was performing for the OLC Head Start Program or OLC on the date of Ms. Welter's injuries.   However, only nine days later, Ms. Welter and her attorney entered into a stipulation with Ms. Her Many Horses for dismissal with prejudice.   (Docket 5, CIV. 20-5057).

The court finds the government has hidden nothing from plaintiff regarding the three 638 contracts or Ms. Her Many Horses' employment by the

OLC Head Start Program. Staying resolution of the government's motion to dismiss and permitting plaintiff to conduct exploratory Rule 56(d) discovery is not justified. The government's Rule 12(b)(1) motion is granted.

## ORDER

Based on this analysis, it is

ORDERED that the defendant's motion to dismiss (Docket 7) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to conduct Rule 56(d) discovery (Docket 19) is denied.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed without prejudice.

Dated March 15, 2021.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                UNITED STATES DISTRICT JUDGE